# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SILVIA J. THOMAS,

        Plaintiff,

v.

CHANCEY P. MILLER and ELMWOOD CEMETERY,

        Defendants.

Case number 07-11760

Honorable Julian Abele Cook, Jr.

_____

## ORDER

On November 30, 2006, the Plaintiff, Silvia Thomas, initiated this lawsuit in the Wayne County Circuit Court of Michigan, in which she accused the Defendants, Chancey P. Miller and Elmwood Cemetery, of providing her with an unsafe workplace and wrongfully terminating her employment. She amended her complaint on March 26, 2007 to include a claim against the same Defendants under 42 U.S.C. § 1981. Approximately one month later, this lawsuit was removed by the Defendants to this Court on the basis of its federal jurisdictional authority. On August 2, 2007, the two Defendants filed a joint motion to dismiss Thomas' complaint, citing the doctrine of res judicata as the basis for their request. As an alternative form of relief, they have asked the Court to dismiss the five issues in counts 3, 6, 7, 8, and 9 from the complaint because of Thomas' alleged failure to state a viable claim. Fed. R. Civ. P. 12(b)(6).

For the reasons that have been set forth below, the Defendants' dispositive motion will be granted in part, and denied in part.

I.

Silvia Thomas is an African-American woman who was employed by Elmwood Cemetery in Detroit, Michigan as a sales consultant from 1993 to 2004, a period during which Miller served as its general manager. In her complaint, Thomas alleges that she was subjected to second-hand cigarette smoke and toxic mold during her employment at the Elmwood Cemetery, both of which caused her to develop severe health problems. During the latter days of February 2003, she submitted a complaint to the City of Detroit's Building Safety & Engineering Department, citing to the presence of toxic mold and lead dust in her workplace. On January 16th of the following year, Thomas' employment tenure was involuntarily terminated. At some point after her termination, Thomas learned that the Blue Cross/Blue Shield health care protection that had been extended to her by the Elmwood Cemetery had been cancelled. Thomas contends that Miller wrongfully refused to allow her to continue this health insurance coverage through the applicable provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161, 1166.[1]

Thereafter, Thomas filed a lawsuit in the Wayne County Circuit Court of Michigan on April 23, 2004, in which she complained that the two Defendants had (1) wrongfully discharged her in retaliation for having reported these environmental concerns to the municipal authorities, and (2) violated her rights to access the applicable provisions of COBRA. The Defendants, after denying these charges, removed the case to this federal court. However, following a voluntary dismissal by Thomas of her COBRA claim, the case was remanded to the Wayne County Circuit Court.

---

[1]This statute, in essence, enables those workers, who have lost or left their jobs, to continue receiving health benefits that had been previously provided to them by their employers for a limited period of time.

Although the parties thereafter agreed to submit their respective positions to an arbitrator, they were unable to agree upon the terms that would govern the arbitration process. However, when it became apparent that no progress had been made by the parties toward a resolution of their contested issues, the state court dismissed the case without prejudice on January 3, 2006.

Thomas filed a second lawsuit in this federal court against the same Defendants in February 2005 (Case No. 05-70473), alleging a violation of COBRA. On September 7, 2005, this Court dismissed her lawsuit with prejudice, finding that both of the Defendants were entitled to the entry of a summary judgment. Fed.R.Civ. P. 56.[2]

On November 30, 2006, Thomas returned to the judicial arena for a third time, in which she asserted a series of claims against her former employer and its general manager in the Wayne County Circuit Court. However, she modified her complaint on April 20, 2007 to include a federal claim under 42 U.S.C. § 1981. Following her amendment, the Defendants removed the lawsuit to this Court. In Thomas' amended complaint, she makes the following allegations against the Defendants; namely, (1) a violation of the Elliott-Larsen Civil Rights Act of Michigan, Mich. Comp. Laws § 37.2101 *et seq.*; (2) an intentional tort in violation of Mich. Comp. Laws § 418.131(1); (3) a wrongful discharge in violation of Mich. Comp. Laws § 408.1065; (4) a violation of 42 U.S.C. § 1981; (5) an intentional infliction of emotional distress; (6) a violation of an employer's duty to provide its employees with a safe work place; (7) negligence; (8) reckless or wilful and wanton conduct; (9) a violation of the Michigan Whistle Blower's Protection Act, Mich.

---

[2]Elmwood Cemetery has fewer than twenty employees, and thus, it is not required to provide COBRA benefits to its former employees. Notwithstanding, Thomas submits that when a white employee, John Winn, left his employment at the Elmwood Cemetery prior to the termination of her job, he was given an opportunity to continue his health insurance through COBRA.

Comp. Laws § 15.361; and (10) "false lights."[3]

II.

Under Michigan law, the doctrine of res judicata bars the litigation of a claim in any subsequent action if (1) the prior action was decided on the merits; (2) the issues in the second case were resolved or could have been resolved in the first case; and (3) both actions involve the same parties or their privies. *Dart v. Dart*, 460 Mich. 573, 597 N.W.2d 82, 88 (1999). The doctrine of res judicata applies broadly and precludes the litigation of claims that are identical to those which have already been resolved, as well as those claims which "[arose] out of the same transaction which plaintiff could have brought, but did not." *Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992).

Here, the Defendants assert that (1) the dismissal of Thomas' lawsuit in 2005 constituted a rejection of her claims on the merits, and (2) Thomas' claims in the current lawsuit could have been resolved in the earlier case. In response, Thomas, while acknowledging that the parties in the preceding lawsuits are identical to those in this litigation, submits that the current lawsuit is merely a reinstatement of the original lawsuit between the parties that was dismissed without prejudice by the Wayne County Circuit Court for lack of progress.

In general, grants of summary judgment are decisions on the merits of an action. *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978). In the 2005 lawsuit, the Defendants, in support of their motion for a summary judgment, argued that Thomas would be unable to prove that the Elmwood Cemetery had twenty or more employees, as required to establish liability under

---

[3]In this count, Thomas alleges that Miller disseminated information to the Board of Trustees which "placed her before them in a false light or false position. . . ." (Thomas' Amended Complaint. ¶ 234.)

4

COBRA[4]. This Court agreed, and granted summary judgment in favor of the Defendants. An appeal to the Court of Appeals for the Sixth Circuit followed. The Sixth Circuit, in affirming the dismissal of this litigation, also opined that "at the time the district court rendered its decision, it should have dismissed the case for want of subject matter jurisdiction because it was clear that our precedent required that result." *Thomas v. Miller,* 2007 U.S. App. LEXIS 15245, 2007 FED App. 0247, **4 (6th Cir. June 27, 2007). In 2005, the numerical threshold in the COBRA statute was jurisdictional, rather than serving as an element of a plaintiff's claim for relief. *See Douglas v. Baldwin & Assocs., Inc.,* 150 F.3d 604, 607 (6th Cir. 1998). However, during the following year, the Supreme Court rendered an opinion in *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516 (2006) which held that such an application threshold is an element of a claim rather than a jurisdictional bar.

Dismissal by a court for lack of jurisdiction is not generally considered to be an adjudication on the merits.[5] Here, although the challenged order was in response to a motion for summary judgment, the decision was based on the undisputed fact that the Elmwood Cemetery had less than twenty employees. At that time – in 2005 – this meant that the Court lacked subject matter jurisdiction. As such, it was not a decision on the merits, and does not have the effect of res judicata.

III.

As an alternative form of relief, the Defendants contend that the Court should dismiss

---

[4]Under the small business exception, employers with less than twenty employees are exempt from adhering to the notification requirements of COBRA. 29 U.S.C. § 1161.

[5]Fed. R. Civ. P. 41 (b) states that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal . . . other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

Thomas' claims because of her failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, this Court is obliged to (1) construe the complaint in a light that is most favorable to Thomas, (2) accept her factual allegations as true, and (3) determine if she can prove any set of competent facts that would entitle her to overcome the defendant's application for relief. *First American Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007). In order to survive a motion to dismiss, a claim "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id* at 444.

In Count 3 of Thomas' complaint, she claims to have been terminated from her employment at the Elmwood Cemetery in retaliation for a complaint that she made to the City of Detroit's Department of Building Safety & Engineering regarding the presence of toxic mold and dust in her workplace. It is her view that this alleged act of retaliation was in violation of the Michigan Occupational Safety and Health Act ("MIOSHA"), Mich. Comp. Laws § 408.1065. However, the complaint procedure and remedy which has been established by MIOSHA is the exclusive remedy that is available under Michigan law. The statute states, in relevant part, that:

(1) A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint . . . regulated by this act. . . .

(2) An employee who believes that he or she was discharged or otherwise discriminated against by a person in violation of this section may file a complaint with the department of labor alleging the discrimination within 30 days after the violation occurs. Upon receipt of the complaint, the department of labor shall cause an investigation to be made as it considers appropriate. If, upon investigation, the department determines that this section was violated, the department shall order all appropriate relief, including rehiring or reinstatement of an employee to his or her former position with back pay.

Mich. Comp. Laws Ann. § 408.1065 (1)-(2). Thus, when an employer discharges an employee because she has exercised her right under MIOSHA, the remedy provided in Section 408.1065 is

exclusive, and claims of retaliation which fail to comply with these mandatory statutory procedures must be dismissed. *Ohlsen v. DST Industries, Inc.*, 111 Mich. App. 580 (1981).

Thomas argues that the termination of her employment was an act of retaliation for filing an MIOSHA complaint which, in turn, is against public policy. Thus, she argues that the Court should allow her claim to proceed on the basis of the holding by the Michigan Court of Appeals in *Sventko v. The Kroger Co.,* 69 Mich. App. 644 (1976). The *Sventko* case recognized a prohibition on retaliatory discharges when the reason for the termination was the employee's exercise of a right that had been conferred by a well-established legislative enactment. *Id., see also Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 696 (1982). However, *Sventko* is inapposite to the case that Thomas brings before this Court. The issues in *Sventko* dealt with an employee's allegation of retaliation for having filed a workers' compensation claim – not with MIOSHA. Moreover, the Michigan Supreme Court in *Suchodolski* declined to extend the public policy exception to a case involving alleged retaliatory discharge for report of an employer's violation of a code of ethics. *Id*. The Michigan Supreme Court concluded that "the regulation of the accounting systems of utilities is not, as is the workers' compensation statute, directed at conferring rights on the employees." *Suchodolski*, 412 Mich. 696-697. Finally, in *Ohlsen*, the Michigan Court of Appeals found that the public policy exception does not apply to MIOSHA claims. 111 Mich. App. 580, 586. Thus, the *Ohlsen* court unequivocally rejected the argument advanced by Thomas, and this Court must do the same. Thomas has failed to file a retaliation claim within MIOSHA's administrative regime, and she cannot bring a lawsuit in court for that which has been reserved to that agency under Michigan law. The remedies under MIOSHA for retaliatory discharge are exclusive, and accordingly, Thomas' claim in count 3 fails because she has failed to state a claim

7

upon which relief can be granted.

In Counts 6, 7, and 8 of Thomas' complaint, she seeks to recover for the Defendants' alleged failure to provide a safe work place, willful and wanton misconduct, and negligence, respectively, all of which she claims caused her to sustain injuries and diseases. Michigan law specifies that the Worker's Disability Compensation Act is the exclusive remedy for workplace injuries and occupational illnesses suffered by employees. The applicable language provides that:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.

Mich. Comp. Laws § 418.131(1). Outside of the worker's compensation scheme, an action for an intentional tort is the sole vehicle for a Michigan employee to maintain an action for workplace injury against his employer.

However, in order for the exclusivity provision of the Michigan Disability Compensation Act to apply, an employer must maintain worker's compensation insurance within the state of Michigan. The statute states as follows: "The employee of an employer who violates the provisions of section 171[6] or 611 shall be entitled to recover damages from the employer in a civil action because of an injury that arose out of and in the course of employment notwithstanding the provisions of section 131." Mich. Comp. Laws § 418.641(2). Section 611 requires that an employer

---

[6]Mich. Comp. Laws § 418.171 concerns the liability of employers who enter into contracts with uninsured contractors. Employers are liable to "pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the" employer.

8

"insur[e] against liability with an insurer authorized to transact the business of worker's compensation insurance within this state." Mich. Comp. Laws § 418.611(1)(b). Thus, if an employer does not have worker's compensation insurance within the meaning of the Act, an employee is not bound by the exclusivity provision in Section 131.

Here, Thomas alleges that the "Elmwood [Cemetery] permitted its workers compensation coverage to lapse, at times relevant to Plaintiff's complaint." (Thomas' First Amended Complaint at ¶ 2.) In response, the Defendants submitted an affidavit, along with their motion to dismiss, that was ostensibly designed to demonstrate that Elmwood Cemetery has had "workers' compensation insurance in place for at least the last ten years." (Defendants' Brief at 13.) However, an evaluation by the Court on the merits of the facts which surround this dispute would be premature at this stage of the proceedings. Inasmuch as the Defendants have filed a motion to dismiss, the Court need only consider whether Thomas has sufficiently asserted a claim for which relief can be granted.[7] Having construed Thomas' allegations in a light that is most favorable to her, and after accepting her version of the pertinent facts to be correct, the Court concludes that her charges, in which she asserts that the Elmwood Cemetery did not maintain proper worker's compensation insurance during the relevant periods of this litigation, are not barred by the exclusivity provision of the Worker's Compensation Act.

Alternatively, the Defendants contend that the Court should dismiss Counts 6, 7 and 8

---

[7]In a footnote, the Defendants state that "to the extent the Court considers this. . . beyond the pleadings, Defendants understand the Court may convert this portion of the Motion to a Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56(c)." (Defendants' Brief at 13, footnote 3.) The Court declines to treat this portion of the Defendants' brief as a motion for summary judgment, noting that (1) discovery has not yet begun in this case, and (2) Thomas has not been afforded an opportunity to provide her own affidavits and factual support of her claim. Accordingly, the Court will resolve this matter under the prevailing motion to dismiss standard.

9

because Thomas has alleged that they breached the statutory duty of care, as set forth in Mich. Comp. Laws § 408.1011, a provision of MIOSHA which does not create a private right of action.

The general duty provision in MIOSHA states that Michigan employers shall "[f]urnish to each employee, employment and a place of employment which is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." Mich. Comp. Laws Ann. § 408.1011(a). As Defendants correctly point out, MIOSHA does not create a private right of action for employees injured by violations of safety standards:

> Nothing in this act shall be construed to supersede or in any manner affect any workers' compensation law, or to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

Mich. Comp. Laws § 408.1002(2). Several years ago, the Michigan Court of Appeals observed, in *Ghaffari v. Turner Constr. Co.*, that MIOSHA regulations could not be "used to establish a statutory duty in a negligence context." 259 Mich. App. 608, 613 & n.1 (2003).

In Count 6 of the complaint, Thomas alleges that the Elmwood Cemetery "breached its statutory duty," as set forth in Mich. Comp. Laws § 408.1011, to provide her with a safe workplace. (Thomas' First Amended Complaint ¶ 204.) The Court finds that this claim must be dismissed, as there is no right to a private cause of action which is solely due to an alleged violation of MIOSHA.

In Count 7, Thomas submits that the Defendants were negligent, contending that the Elmwood Cemetery had a duty to provide her with a safe work place "under both common law and relevant Michigan statutes, *see, e.g.* [Mich. Comp. Laws] § 408.1011." (Thomas' First Amended Complaint ¶ 2.) While Thomas' claim makes reference to MIOSHA, she has also invoked an allegation of common law negligence. Although the Court agrees with the Defendants that Thomas

may not use the MIOSHA regulation to establish a statutory duty in this claim, *Ghafarri,* 259 Mich. App. 613, it also notes that she has alleged that the Defendants breached a common law duty of care which, in turn, precludes the granting of the currently pending motion to dismiss..

In Count 8, Thomas maintains that the Defendants engaged in reckless or wilful and wanton conduct, as they, despite being aware that the work environment at the Elmwood Cemetery was dangerous to her, failed to undertake any action to reduce the risk of harm. (Thomas' First Amended Complaint ¶¶ 224, 225.) In this claim, Thomas does not refer or cite to MIOSHA. Like her negligence claim, Thomas' claim here is under common law. For the reasons that are similar to those in Count 7, the Defendants' dispositive motion must be rejected.

Finally, Count 9, which contains an allegation that the Defendants violated the Michigan Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361, *et seq* ("WPA"), must be dismissed because it does not conform with the ninety day statute of limitations. The Michigan WPA prohibits employers from discharging employees who reported "a violation or a suspected violation of a law or regulation." Mich. Comp. Laws § 15.362. In her complaint, Thomas asserts that her discharge on January 16, 2004 was in retaliation for having complained to the City of Detroit that the Elmwood Cemetery's "office air was heavily polluted in violation of applicable workplace health and safety statutes. . . ." (Thomas' First Amended Complaint ¶¶ 230, 231.)

The WPA provides that "[a] person who alleges a violation of this act may bring a civil action for . . . damages . . . within 90 days after the occurrence of the alleged violation of this act." Mich. Comp. Laws § 15.363(1). Thus, any action filed under the WPA for alleged retaliatory discharge must be filed within a period of ninety days, and claims brought outside of that time period are not viable. *Covell v. Spengler*, 141 Mich. App. 76, 81 (1985).

Here, Thomas' complaint alleges that she was unlawfully discharged on January 16, 2004. Her first lawsuit, which did not include a WPA violation claim against the Defendants, was not filed until April 23, 2004. Thomas' current lawsuit, which was initiated on November 20, 2006, represents the first time that she raised a whistleblower claim. As such, her failure to satisfy this procedural prerequisite mandates a dismissal of this claim.[8]

VII.

For the reasons that have been set forth above, the Defendants' motion to dismiss must be, and is, granted in part and denied in part. The Court finds that the current lawsuit is not barred by res judicata. However, the Court must, and does, dismiss Thomas' claims in Counts 3, 6 and 9 of the complaint because of her failure to state a claim for which relief can be granted. The balance of the Defendants' motion to dismiss must be, and is, denied.

IT IS SO ORDERED.

Dated: January 9, 2008         s/ Julian Abele Cook, Jr.
      Detroit, Michigan        JULIAN ABELE COOK, JR.
                     United States District Court Judge

---

[8] In her response to the Defendants' motion to dismiss, Thomas claims that the Court should not focus on her discharge on January 16, 2004. Rather, she insists that the more operative date should center on a telephone call in March 2004 by Chancey Miller who had allegedly cancelled her life insurance. According to Thomas, it is the latter date which should be considered by the Court when addressing her retaliatory action against the Defendants. This argument fails for two reasons. First, this allegation was not included in Thomas' initial complaint. Second, even if the March 2004 date had been included in her initial complaint, Thomas did not raise a claim under the WPA until the filing of this lawsuit in 2006.

<u>Certificate of Service</u>

  I hereby certify that on January 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                 <u>s/ Kay Alford</u>
                 Courtroom Deputy Clerk